## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 07-80838-CIV-JOHNSON

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

UNIVERSITY LAB TECHNOLOGIES, INC.,
GEORGE THEODOROPOULOS, a/k/a GEORGE
THEODORE,

Defendants.

FILED by _____ D.C.

**MAR 1 8 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

_____

## ORDER DENYING ERIN THEODOROPOULOS'S MOTION TO INTERVENE
## AND
## MOTION TO VACATE

**THIS CAUSE** is before the court on Erin Theodoropoulos's (Erin) Motion to Intervene

(DE 89), and her Motion to Vacate Order Granting Plaintiff's Unopposed Motion for

Distribution of Funds in Court Registry (DE 96), which are now ripe for adjudication. After

considering the Motions, the court denies the relief sought therein.

On June 30, 2008, Erin and Defendant George Theodoropoulos (George) sold their

marital home located at 17602 Middle Lake Drive, Boca Raton, FL 33496 (the Property),

deriving a profit of $107,809.99. (DE 71 at 3, ¶ 12; DE 73 at 4.) George, the Securities and

Exchange Commission (SEC) and the Receiver in this action indicated to the court on July

2, 2008, that Erin and George had "recently executed a divorce settlement,"[1] and agreed

_____

[1] George represented to the court that Erin initiated the divorce proceedings in November of 2007.
(DE 66 at 3, n.3.)

that Erin was "entitled to half of the proceeds from the sale of the Property."[2]  (DE 71 at 3, ¶ 10.)  Then, the SEC, the Receiver and George moved the court to allow payment of $53,905.00 to Erin, identifying that amount as Erin's one-half interest in the Property's sale proceeds .  (DE 71 at 3, ¶ 11.)  Accordingly, on July 3, 2008, this court ordered Realty Land Title Company, the escrow agent holding the proceeds of the Property's sale, to disburse $53,905.00 to Erin.  (DE 72.)  The July 3rd Order clearly required the other one-half of the proceeds from the Property's sale ($53,904.99) to be deposited into the Registry of the Court, identifying said sum as George's one-half portion of those proceeds.  The court heard nothing further from Erin on the Property's sale proceeds until now, almost eight months after the sale at issue.

At this time, Erin represents to the court that she is entitled to the other half of the Property's sale proceeds because she "intends to use the net proceeds from the sale of her Homestead to purchase another Homestead for herself and her minor child."  (DE 89 at 3, ¶ 12.)  Additionally, Erin avers that this court's March 3, 2009, Order allowing disbursement to the SEC in the amount of $76,952.20 should be vacated because at the time of entry of said Order her Motion to Intervene, filed shortly after the Motion seeking said disbursement (DE 88), was still pending before the court, and entry of the March 3rd Order mooted the Motion to Intervene.  (DE 96 at 2, ¶ 8.)  The court notes that at no time subsequent to the sale of the Property in June of 2008 did Erin appear before the court alleging any type of additional interest in the total proceeds, as she now claims.  Further, not until now has Erin

---

[2] Erin and George also sold the furnishings contained in the Property for $100,000.00, and on July 21, 2008, this court entered an order (DE 76), allowing a disbursement of $50,000.00 representing Erin's portion of the net proceeds of selling said furnishings.  Erin represents to the court that she does not seek additional monies from that sale.  (DE 89 at 5, n.1.)

raised the argument that she wanted to buy another "Homestead" for herself and the minor child. Moreover, Erin also does not provide the court any documentation, such as a divorce settlement agreement, that supports her purported entitlement to more than one-half of the proceeds from the sale of the property. Rather, the record reflects that Erin and George have agreed to her entitlement to one-half of the monies at issue. (DE 72 at 3, ¶ 11.) All that Erin avers in the instant Motion to Intervene is that she "is currently in divorce proceedings with [George]" (DE 89 at 3, ¶ 11), adding in her Reply that "they are not presently divorced" (DE 100 at 5).

On the other hand, the Final Judgment of Permanent Injunction, Disgorgement, and Other Relief entered herein against George (DE 86) took into consideration assets to which he had entitlement and control in order to repay losses suffered by investors, and satisfy prejudgment interest, and civil penalty obligations, which included his one-half share of the proceeds of the Property's sale. (DE 97 at 11.) Also, a review of the documentation of record in this matter shows that in his sworn accounting George represented to this court and to the SEC that the Property constituted his major asset in which he had a one-half interest. See DE 40 at 1 (identifying the Property's value at $2.1 million with a $1.3 million mortgage); see also DE 66 at 2-3, ¶ 4 (indicating presumptive entitlement of each spouse to one-half of proceeds of property owned as "tenants by the entirety"). As a result of agreeing to entry of the said Final Judgment, George relinquished all legal and equitable right, title and interest to any funds listed in the accounting, which the court interprets to include his one-half of the proceeds of the Property's sale, given that it was his major disclosed asset. This finding is supported not only by the SEC's representation that the settlement of this matter was partially based on George's disgorgement of his one-half of

3

the proceeds from the Property's sale, but by the fact that throughout this litigation the court has had control of all monies against which George could have possibly had a claim, to and including the proceeds from the sale of the marital home. And, to reiterate, not until now, has Erin made any attempt to intervene in this action or to represent to the court that she had a right to more than one-half of the Property's sale. Hence, the court finds that the evidence adduced herein allows the favorable presumption on behalf of George's entitlement to one-half of the Property's sale proceeds, and the inclusion of said sum into the disgorgement and payment of interest and civil penalty monies upon which settlement of this matter relied.

Furthermore, Erin relies on broad Florida constitutional protections to support her entitlement to the other one-half of the Property's sale proceeds. (DE 100 at 2-4.) She also argues intervention as of right under Fla. R. Civ. P. 24(a)(2). (DE 200 at 5-6.) Erin, however, ignores the entire argument presented by the SEC on the barring of intervention under Section 21(g) of the Securities Exchange Act of 1934 (DE 97 at 5-8), as well as the contention against permissive intervention. (DE 97 at 10-12.)

A review of the assertions presented under Section 21(g) of the 1934 Securities Exchange Act convinces the court that the SEC correctly argues its position. Not only is the SEC's legal posture a compelling one, but, just as important, Erin does not attempt to distinguish in any way the SEC's argument. Instead, she chooses to present a broad brush averment under Florida constitutional law, tying it to a contention of intervention as of right under Fed. R. Civ. P. 24(a)(2). (DE 100 at 2-6.) Indeed, even in the absence of specific language in Section 21(g) barring intervention, and despite the differing interpretations of that provision, the undersigned is persuaded that under the particular facts of this case,

4

Erin's intervention in this matter cannot be allowed.

More specifically, Erin is not a party to the SEC's action against George for violation of securities laws. She also is not a defrauded creditor who could arguably benefit and/or be protected as a result of the SEC's action, and her claim does not even share common issues with those of the defrauded creditors for whom the SEC seeks protection in the case at bar. She is simply a private individual seeking monies derived from George's one-half interest in the marital home which was listed as George's major asset in connection with the instant litigation. Said differently, she is an individual completely outside the realm of this securities fraud action who is attempting to inject a personal claim totally unrelated to the SEC's enforcement proceedings at bar. Notably, Erin totally ignores the SEC's representation to the court that "the settlement was based in part upon [George's] turning over half of his share of the proceeds to the Commission." (DE 97 at 11.)

Thus, the court is convinced that allowing Erin's intervention in this cause opens the door to a serious, substantial evisceration of Section 21(g) and would complicate unnecessarily and detrimentally these proceedings. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332 n.17 (1979) (observing that "additional issues" and "additional parties" complicate prosecuting of enforcement actions even when intervention based on same fraud allowed) (citing SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1239-40 (2ᵈ Cir. 1972)).

Moreover, Erin's attempt to protect the funds she seeks under the guise of homestead protection by the Florida Constitution ignores, and totally fails to address, a line of cases that clearly distinguish the protection averred. In particular, the court notes that even though the Florida Supreme Court "has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home," that

5

"exemption is not to be so liberally construed as to make it an instrument of fraud or imposition upon creditors." In re Financial Federated Title & Trust, Inc. v. Kozyak, 347 F.3d 880, 886 (11th Cir. 2003) (citing Milton v. Milton, 63 Fla. 533, 58 So. 718, 719 (Fla. 1912)). Indeed, in Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925), the Florida Supreme Court disallowed using the homestead protection "as a shield and defense after fraudulently imposing on others." 106 So. at 130. The Jones principle has been restated consistently and repeatedly by the Florida Supreme Court. See, e.g., Havoco of Am., Ltd. v. Hill, 790 So.2d 1018 (Fla. 2001); Palm Beach Savings & Loan Ass'n, F.S.A. v. Fishbein, 619 So.2d 267 (Fla. 1993); Soneman v. Tuszynski, 139 Fla. 824, 191 So. 18 (Fla. 1939); La Mar v. Lechlider, 135 Fla. 703, 185 So. 833 (Fla. 1939); and Craven v. Hartley, 102 Fla. 282, 135 So. 899 (Fla. 1931). In Fishbein, the Florida Supreme Court upheld the imposition of an equitable lien against homestead property as a result of the debtor's obtaining a loan fraudulently and using it to satisfy existing mortgages on the homestead property. 619 So.2d at 270. On imposing that lien, the Supreme Court indicated that "[w]here equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of Article X, Section 4 [of the Florida Constitution]." Id. In other words, the Florida Supreme Court recognizes that fraud directly connected to the homestead property serves as an exemption to the constitutional protection. In the same vein, the Havoco Court indicated that if equities demand it, equitable liens can be imposed against homestead property that is used as an "instrument of fraud or imposition upon creditors." 790 So.2d at 1023 (quoting Milton, 63 Fla. 533, 58 So. at 719)). Thus, Florida law recognizes that creditors cannot be defrauded by brandishing the protection of the homestead exemption.

6

The Eleventh Circuit and the Southern District of Florida follow the Florida Supreme Court's precedent from Jones and its progeny when monies obtained fraudulently are directly connected to the homestead. See, e.g., In re Chauncey, 454 F.3d 1292, 1294 (11th Cir. 2006) (recognizing need to reach beyond literal language of Florida's homestead exemption when funds resulting from egregious conduct or fraud used to purchase homestead, invest in it or improve it) (citing Havoco of Am., Ltd. v. Hill, 255 F.3d 1321, 1322 (11th Cir. 2001) and Havoco 790 So.2d at 1020) (quoting Milton, 63 Fla. 533, 58 So. at 719)); In re Mesa, 232 B.R. 508, 512-13 (S.D. Fla. 1999) (disallowing homestead protection from hindering, delaying or defrauding creditors or in converting non exempt assets). Thus, it is clear that controlling case law disallows using the homestead exemption as an instrumentality of fraud. Fraud, of course, is at the heart of the case at bar. Yet, Erin ignores controlling precedent without even making an attempt to distinguish it. Accordingly, the court finds that Erin's broad based reliance on the Florida Constitution is not well based. As a result, it is hereby

**ORDERED AND ADJUDGED** that Erin Theodoropoulos's Motions (DE 89 and 96) are **DENIED**, including her hearing request.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 18th day of March, 2009.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

Copies to:   All Counsel of Record
             Richard B. Warren, Esq., 1555 Palm Beach Lakes Boulevard, Suite 1006,
             West Palm Beach, FL 33401, Attorney for Erin Theodoropoulos

7